Good morning. May it please the court, my name is Rex Reinke with Aiken County. I would like, I represent the defendants in appellants, and I would like to reserve five minutes for rebuttal if you would mind. In this false claims act case, the plaintiff called the relay to order in this case, and the defendant agreed to do an arbitration, and he disputed between them. The district court found that nobody contested that that was a valid agreement. We disputed that. That's the first problem we have to come to. Everybody's saying this is a valid agreement, right? Yes. I don't think there's any dispute. It's a valid agreement here. What kind of agreement? Is it an employment agreement? Well, the plaintiffs say it's solely, I'm sorry, the plaintiffs, the relay jurors say it's solely an employment agreement. We say it is not solely an employment agreement based on the language of the agreement. Because, well, is there no X? Hold on before you get into that. So we must interpret the arbitration agreement, right? That's our job. Right. And we do that in de novo. Right. So what law governs this agreement? That's an interesting question. I haven't seen any cases that say it would. No, I haven't seen anything argued by any party about that. Right. It seems to me the agreement was entered into in Nevada, right? Probably Nevada law. So it would seem to me that Nevada law ought to govern, wouldn't it? Right. So Nevada law governs. What does Nevada law say about interpreting this contract? Nevada law, like federal law, says that arbitration is favored and that unless there's a clear reason to conclude that the arbitration agreement does not cover the dispute it's covered, that is the presumption, is that the agreement is covered. So in Nevada law, we don't have it like in California where you get all these, everybody's trying to figure out what the agreement is, but in California you automatically go get some extrinsic evidence. You don't have that in Nevada. You look at the agreement, and you find out it's a written language. If it's clear and unambiguous, it's enforced as written, and if it's susceptible to interpretation that covers a certain dispute, then we resolve it in favor of arbitration. Correct. And there's no extrinsic evidence that's been offered here by anyone, even if it wasn't in this order. Right. Okay, so what kind of agreement do you think it is? Well, we think it's an agreement that covers any disputes between a plaintiff and the defendants because of the language of the agreement. First, it's in which particular clause? Certainly. I'm starting with the clause that says both the defendants and the plaintiff must agree that any claim to seek, dispute, or controversy that they may have, that the plaintiff may have, against the drug commune's officers and so on, arising from, related to, or having any relationship or connection whatsoever with their seeking employment or employment or other association with the defendants. So it's not limited to employment. So that's your argument? Well, I would say that you may have a better argument. It's that if words arising from, related to, or having a relationship were not contained within that clause. Maybe so, but the language is other association. It's not limited to just employment. And then there's the additional language which says that all disputes, whether they're based on employment statutes, federal or state, or any other state or federal law or regulation, equitable law or otherwise are covered here. And any federal or state law surely covers this situation, and otherwise surely covers this situation. So, in your mind, we're focusing in on arising from, related to, or that would mean we'd have any one of the three, having any relationship or connection whatsoever with seeking employment or employment, and you're now really focusing on or other association with the company. Yes. And so you're saying this is other association with the company, therefore must be arbitrated, which, as I understand it, is buttressed by this idea that all disputes, regardless of whether they're related to, and then they sign a bunch of laws, and then they say other state or federal law or regulation. Right. Or otherwise. And I would also add that there are exclusions here. It's the arbitration clause, like claims to the National Labor Relations Board, workers' compensation, statutes, and so on. But there's no exclusion here for claims under the Federal Arbitration Act, defense of which the parties wanted to do. Of course, they could have easily added that to the list of exclusions, but they didn't. How does this claim have anything to do with her employment? Well, it's related to her employment, but it is not, obviously, an employment claim. She actually might not be in any position to have a false claims act claim, were she not an employee because she learned everything that she claims here. But I don't want to exaggerate. I'm trying to determine if that really makes it related to. And it seems her better argument is having any relationship or connection whatsoever with. Right. And you made that argument to the district court? Yes, the district court agreed with it. Of course, we realize that we're fewer to know about it. Well, the district court said, because the government's in here, it doesn't matter. Well, it doesn't matter in this case. The district court said that the arbitration could really cover this dispute because it was argued that it did not. And then it said, even if it does cover this dispute, it doesn't matter because the government's here. That's the second issue. Right. And it's that question that we submit that, as I said, it's a valid arbitration agreement. It should be enforced. The claimant, the relator, is under the Supreme Court's decision and from one agency to both the agent and the partial S&D of the claimant. Is the relator going to get anything out of this? If they prevail and subject to the district court's decision, could it allocate any recovery? Yes. So you're adding, if I have a company truck on our way to the office, that would be irreparable? Exactly. We think that it covers anything, but that demand could not, because it doesn't fall under any federal or state law, although, frankly, we would probably argue that it falls within the otherwise provisioning. So any claim, because she becomes an employee, any claim that happens to her, regardless of what it is, would be covered? We believe so, but I don't think the court has to go that far to resolve the coverage here. All it has to do is conclude that this falls within any federal or state law or otherwise. That's the kind of dispute that's covered by the agreement. This claim isn't? Well, that's an interesting question. It is ultimately both the relator's and the government's claim. How does it become the relator's claim? Because under the Vermont agency decision by the Supreme Court, the relator is a partial S&D of the claim and has an interest in the claim. Is the Nevada DTF statute broader or more narrow than a federal statute? I don't think it's any different than this, and no one is arguing that it's any different than this. So, obviously, the second question is, okay, what's the effect of the government being in here? And we submit, and just like any other agent or partial S&D, that person is subject to immediate agreements or defenses that would be unique to them. So, I mean, to give you an example, what if the S&D here was a corporation, but it hadn't paid its corporate franchise taxes and, therefore, had no right to pursue a claim unless and until it paid those taxes? We submit that in that situation, the corporation could not pursue the claim that the defendant would have without a defense or assume that the relator was minor. Again, the defendant could say, well, a minor can't bring this claim, at least without the approval of their guardian. So the S&D would be subject to those kinds of defenses. So you're saying that this fraud is the government. It's not your claim. It's not the relator. Right. But the government has allowed the relator to pursue the claim. Is the fact that the government has allowed the relator to pursue the claim have anything to do with the second question here? Well, I think so, in a sense. Our point is that the government allowed the relator to pursue the claim. The relator is both the agent and the partial assignee here. Could the government have refused to allow the relator to go forward with the claim? Oh, absolutely. The government had the power in the 60-day window to come in and take over the case. It chose not to do so. The government also still has the power to seek to intervene if it shows good cause for intervening at this stage. So the government had more than enough power to protect any interests that it had here, and as it didn't want there to be any arbitration, it could have stepped in and said, no arbitration. Well, the government did. So they had a brief. They submitted a brief. They didn't become a party, and that's the problem. They're not a party. They're the real party. Well, they're the, in a sense, they're the beneficiary of the action. Right. They're interested. I am not a beneficiary. I guess the problem comes, and I guess what you're trying to do is say if they weren't a party, but they were allowed to submit a brief, does that have any effect on this decision? That's not because they're simply an amicus. They can make their argument, but they're not a party here. If they wanted to be a party and they wanted to overturn arbitration, they could have intervened. Yeah. This is someone who doesn't have any interest in litigation. This government does have an interest. Sure, but when you allow someone else to be in the regulatory to act as your agent and make them a partial assignee of the claim, that's eliminated their claim by allowing the agent to proceed. It's not eliminated the government's claim. No, of course we're not saying the government's claim is eliminated at all here. We're just saying that it should be resolved in the form of arbitration. We're not saying the government's claim is eliminated. So if they have an agreement to arbitration, how can you force the government to go to arbitration? We're not forcing the government to go to arbitration. A, we didn't make a motion to compel the government to go to arbitration. We made a motion to compel the relator to go to arbitration. The relator only agreed to arbitrate. And the relator who the government allows to pursue the claim. In somebody in that position, a partial assignee and an agent, as I said before, is subject to defenses that may be unique to it and don't have anything to do with the person who assigned the claim to them. And here it's even better for the government because it has the power to come in and intervene and take over the litigation if it wants to do so. Oh, and if it does, then they don't have to go to arbitration? I don't think they have to go to arbitration if the government comes in and intervenes. Oh, the only thing to keep this from going to arbitration, in your mind, which I thought you were going to get there, and I'm glad you have, is come in, Nevada, and the government come in and take over the claim? Yes. Even though the relator is acting as the government's agent? Yes. Even though the relator is acting as the government's agent? Right, but my point is that somebody who's an agent, partial assignee, is subject to defenses as I described, for example, if they were a corporation. And so if the government isn't helping with that, if the government says, that disadvantages us too much, the government's free to deal with that by intervening, but having chosen not to, becoming allowed the relator to pursue the claim on the government's behalf, the government can't object to anything that is inflexible to the relator, whether it's a minority and arbitration agreement, the fact they want to take the corporate test. Thank you. Thank you. We'll hear from United States and Welsh. Hey, this is Clark. Lindsey Powell for the United States. Could you guys briefly discuss the scope of the agreement here? It is an employment agreement. It was entered into. It is an employment agreement. It is not an employment agreement. It's a six-year agreement. The language begins by talking about hiding arbitration disputes arising in or from an employment situation. It says, or it may arise out of the employment context, and then it says, as counsel has pointed out, both the company and I agree that any claim to arbitration dispute at our controversy that either I may have against the company or the company against me. And this is the language, and that's the worry that I have. How do you explain what counsel has suggested, having any relationship or connection whatsoever with any association with the company? A few things, Your Honor. First, it's the language that the agreement concerns claims that either the relator may have against defendants or defendants against the relator. It is crucial here because these are not, say, criminal false claims. IP10 claims are not claims just between the relator and the defendants and vice versa. They are also claims that belong to the government, and they're from the text of the False Claims Act itself. But she does, the relator does have a claim or dispute. The relator will get something out of the claim or dispute. But it's not just her claim. I think that's the lesson from this Court's decision in Stoner as well. That's why the plaintiff in that case... It's not just her claim. It's not just her claim. So what does it say in this language which would say it's got to be solely her claim? Well, it's only talking about claims that are her for. Well, it isn't talking about claims that are solely hers. It just talks about any claim or dispute that I may have. It doesn't say may solely have. That only I may have. And then it doesn't say having any relationship or connection whatsoever with any association with the company. That's pretty broad. And then the worry that I have, which I guess you've got to explain as well, included within the scope are all disputes. All disputes. About any other state or federal law or regulation, equitable law or otherwise. And then it lays out the exceptions. Well, and all the examples given have to do with claims concerning employment. But the... No, no. It doesn't say just about employment. Sure, they do suggest the state employment statutes. They do suggest Title VI or VII of civil rights. But then they say or any other state or federal law or equitable law doesn't say relating to employment. I am sensitive to the amount of time that we have in this session. I am sensitive too and I'd like you to answer my question. Yes, John. The claim here... So two things. One, the defendant suggested that if the wording here was why don't you cover any claims whatsoever between the leader and the defendant. And that is not what the contract says. There are clear limitations here. Well, your argument does not say any claim whatsoever. There is a great deal of additional language that must be given maybe to any concerns. Claims are related in various ways. It was a good point. And I'm not sure I understand why you're arguing first in this trilogy here. But, you know, both of us. So, you know, what does it matter to you as a government to whether from whom the plaintiff's claim goes toward arbitration? Yes, John. I think more to the other question. Although the two are related here, I think these are claims that go to false claims that concern a harm to the government, they concern a fraud and harm the public interest. Yes. If you had so little concern about it that you didn't choose to intervene. The decision with respect to intervention does not evidence a lack of concern. Congress in establishing the provision of key time-relaters understood the importance of those time-relaters and the vast majority of false claims in a case. That is how the litigation was brought. But the things always belong to the government. The government retains a huge degree of control over these claims and can intervene at any point. What's wrong with you intervening and we can get rid of this case? This scheme established by Congress does not require the United States to intervene. It's stupid. It's stupid. So, I think you answered my question. Why do you care? Because your interest is not affected by the arbitration agreement. They're not asking you to go to arbitration. Well, it's not entirely clear to me what they're saying would follow from arbitration if it's only in the reply brief that they appear to be saying that, in fact, the government wouldn't be bound. That is a very significant confusion that seems to me. As far as you're concerned, that's why I say it. I'm sort of surprised that you're up arguing first. You're sort of like the tail end of the security. You're the ones who chose to run along and see what happens. Today, you want to be up first talking about just the harm of the government's interest. The government has an overwhelming interest in the litigation of these claims and Congress provided for litigation and arbitration is only appropriate where the parties have consented and where they're necessary. The claim belongs to the government. The government's consent is essential. So, Maitike and the relator have now conceded that arbitration would not be binding on the government. That's an important concession. We emphatically agree. But it's still not the right result to compel arbitration even in a scenario in which it's not binding, it's not compatible with the scheme or the requirement of consent. And I think if you look at some of the practical incongruities here, you see the evidence that a false name tag requires the relator to file a complaint under seal in court. That is what Congress required by statute. That's why the relator acquires an interest in that claim. If the relator has entered a binding arbitration agreement, how is she to go file that complaint? She should be proceeding  And so that would support the operation of this scheme that Congress has come up with and the relationship between the relator and the United States. And am I correct that the motion to compel arbitration was brought after the government declined to intervene? Yes, Your Honor. And I take it the government's position is this is the government's decision. If you want to make a safe case and there's money, you want the relator to go in and pursue it. Yes, Your Honor. That is the position. And I know so many of these false name tag claims are seen as the government's project to allow the claim to continue to be litigated by a relator. Of course, we have the authority to intervene at any point for good cause and arbitration would interfere with that as well. It's also significant here that what the arbitration agreement provides for is binding arbitration. So it doesn't serve that agreement or the purposes, the time-saving purposes and the finality generating purposes of arbitration to have this sideshow where the claims are arbitrated but they're not ID and the government at some point resumed litigation. It doesn't, there's no coherence in that theory. But our bottom line here is that these claims always belong to the government as court has said it and the Supreme Court has acknowledged it. The fact that... These belong to the government but if you're going to allow the relator to bring them then the relator has some interest in them, correct? Certainly some interest. What we do is our interest and our consent is therefore essential. Arbitration is promisal in consent and we do not consent here. We might consent in other cases. We're not saying that there's anything in the false claims that is per se compatible with arbitration where the government has shown as it has given its consent and that many of the practical considerations that we're so concerned with fall away. But arbitration requires consent from those parties whose claim it is. This is our claim. Whether or not we're formally a party to the litigation it is our claim. Our consent is required and if that is concession then the court can say well, arbitration is appropriate here but not binding. We'll go ahead and modify the agreement in order not binding arbitration so that the government retains its rights to do what it wants down the road. That comes from nowhere and that's not consistent with the terms of this contract. That comes from nowhere but that might mean that if you don't have any claim that if you're going to let this go to arbitration you're lost. I mean, they'll give in to you. They've suggested they'd give in but the bottom line is if you're going to let your relay term if they're entered into an agreement like this then and this is the language under Nevada law which should apply then I'm I guess I'm having a tough time on how then the government other than standing in and saying this is our claim and we're not letting it happen, the relay term is out in this particular instance how do they get out of it? That's not that's not some of the false names I did this court said in Stoner a relayer does not bring to the answer on behalf of himself it is on behalf of the United States it belongs to the United States and so the United States does not belong to the government as already said just one question your honor okay to answer your questions the government cares because the claims do belong to the government as Ms. Lindsey now said and the reason that the claims belong to the government is because of the False Claims Act the False Claims Act goes is a very unique statutory scheme in the Nevada False Claims Act which claims are brought in Nevada under our False Claims Act as well as the Federal False Claims Act there's substantial similarity so for the purposes of that we look to the congressional intent of why why Congress allowed the False Claims Act to be called to come forward and we're not willing to understand how to combat and identify fraud against the government that's why the claims belong to the government that's why we care about them we don't get into the arbitration agreement because the claims are ours the realtor doesn't isn't bringing these claims on behalf of herself she's bringing these claims on behalf of the government she stands to learn that they earn something from this depending upon whether or not they get hurt by it it's not a you're going to hurt her she stands to learn because that was the history of the False Claims Act was to provide for an incentive for people to identify and bring fraud to the government Nevada would ultimately stand to recover anything that was that was fraudulently stolen from the company so there's only really one way to steal from Medicaid for example it's a claim for a piece of service that you don't provide the only way to really discover that is through people people are often employees it really seems to be what you're arguing is the language of this arbitration agreement is not applicable to your claim because some place under the False Claims Act that that particular agreement is illegal it's not illegal it's not unenforceable it's not applicable to the False Claims Act says that I don't want to hear about your history I don't want to hear all about that because I can read history the way I want to read it what language says that? It's written primarily in a stoner case and interpretation by the courts that we have written the language in statute in some stoner case it's not in the language of the statute exactly however interpreted the government always holds the false claims okay thanks good morning to Scott Oswald on behalf of the relator Mary Q. Walsh I wanted to ask what that means so the first question that you raised which is why does this matter the government only intervenes in 18% of all cases it really is a precipitous issue the government simply doesn't have the resources that are required to prosecute it I want to paint a picture for you for just a moment of what that means what you're suggesting is because the government doesn't want to prosecute all these claims there is in this language which would suggest that it can allow somebody else to do it can it allow for attorneys fees to be taken through court your honor the answer is yes that's what the statute contemplates for sure my worry is and I guess this is the question I've got to find some language the statute requires several things that occur the one thing that occurs is notice to the United States in the filing of the complaint that it is under seizure of the United States in 60 days to investigate the claim including additional time if the defendants will have their way this claim would then be forced into arbitration so what we're doing is we're we're later must file the complaint in arbitration the United States may never get notice they're certainly never going to have a seal in place to engage in investigation because arbitration requires that the defendant be notified to leave this arbitration agreement requires the defendant leave that Mr. Oswald is there any language in there that says under this false claims act that arbitration agreements are therefore unenforceable no your but that's not and I've got to read that in what the language says well statutory scheme is important and I think it's an important issue and I guess that's what I'm trying to say is so what you're really arguing I can look up the statutory scheme and find the same as no arbitration agreements are enforceable under the false claims act  and I know that most of the law employers now have very broad arbitration agreements given what the Supreme Court said that this would really force the government to take over all these cases in order to avoid arbitration in every case in all cases          thank you very much case 16 16070 is submitted thank you
judges: Fisher, Schroeder, N.R. Smith